# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | CRIMINAL NO. 06-304 |
| JOHN P. HOJNOWSKI, SR. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, Suzanne B. Ercole, Assistant United States Attorney, respectfully submits this sentencing memorandum regarding defendant John P. Hojnowski, Sr. who is scheduled to be sentenced on February 27, 2007. For the reasons discussed below, the government respectfully recommends a sentence within the advisory guideline range of 24-30 months incarceration and the imposition of a $10,000 fine.

**I.     INTRODUCTION**

On June 22, 2006, a federal grand jury in the Eastern District of Pennsylvania charged the defendant in a one-count indictment with possessing an unregistered machine gun, in violation of 26 U.S.C. § 5861(d). On August 22, 2006, the defendant appeared before this Honorable Court and pleaded guilty to Count One of the indictment. The defendant admitted he arranged to have the firearm, originally an Uzi semi-automatic submachine gun, modified to operate as a fully automatic machine gun. He also acknowledged that the machine gun was not properly registered in accordance with federal regulations. The terms of the guilty plea agreement included conditions for the defendant's cooperation. However, the government has determined that the

defendant has not provided complete and substantial assistance which merits a motion for departure under USSG § 5K1.1. Accordingly, no such motion has been filed by the government on Hojnowski's behalf.

## II. SENTENCING CALCULATION

### A. Statutory

The maximum sentence that may be imposed for a violation of 26 U.S.C. § 5861(d) is 10 years imprisonment and a fine of $250,000.

### B. Sentencing Guidelines

The sentencing guideline range as determined by the United States probation office is 24 to 30 months incarceration, which is based upon a total offense level of 17. This is calculated as follows:

(a) base offense level of 18, under § 2K2.1(a)(5);

(b) an upward adjustment of 2 levels because the firearm was reported stolen, under § 2K2.1(b)(4);

(c) 3 level downward adjustment for acceptance of responsibility.

The plea agreement contemplates a total offense level of 15, with an applicable guideline range of 18 to 24 months incarceration.

## III. RECOMMENDATION

For the reasons discussed below, the government respectfully recommends that the Court impose a sentence which requires the defendant to serve a term of incarceration within the applicable advisory guideline range. The government also requests that as a condition of supervised release, the defendant be ordered to pay a fine of $10,000.

A.      **The Guideline Range**

In imposing sentence, the Court must take into account the factors set forth in 18 U.S.C. § 3553(a). United States v. Booker, 543 U.S. 220, 261 (2005). First, as stated in Section 3553(a)(4), the Court must determine and consider the sentencing range established in the Sentencing Guidelines. The Third Circuit has confirmed: "In consideration of the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a defendant's particular circumstances." U.S. v. Cooper, 437 F.3d 324, 330 (3d Cir 2006). This Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the Booker decision. Id.; see also United States v. Giaquinto, 441 F.3d 195, 196 (3d Cir. 2006) (court may continue to determine by a preponderance of the evidence and consider the defendant's relevant conduct in determining the guideline range). In short, the guideline range should be calculated in the same manner as it was prior to Booker.

> [W]e emphasize that the sentencing courts in this Circuit should continue to follow the requirement to "consider" the Guidelines by calculating a Guidelines sentence as they would have before Booker, including formally ruling on the motions of both parties and stating on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and taking into account this Circuit's pre-Booker case law, which continues to have advisory force.

United States v. King, 454 F.3d 187, 196 (3d Cir. 2006).

In this case, as stated in the presentence report (PSR), the applicable guideline calculation for the defendant's conviction under 18 U.S.C. § 894(a) reflects a base offense level of 18, pursuant to USSG § 2K2.1(a)(5). The upward adjustment of an additional 2 levels is

required under § 2K2.1(b)(4), because the weapon in the defendant's possession was a stolen firearm. With an adjustment downward for acceptance of responsibility, the total offense level is 17. Since the defendant's criminal history category is I, a range of 24-30 months incarceration is the proper guideline calculation.

      **B.**      <u>**The Reasonableness of the Applicable Guideline Range**</u>

The advisory guideline range carries considerable weight even after <u>Booker</u>. As the Third Circuit stated, "a within-guidelines range sentence is more likely to be reasonable than one that lies outside the advisory guidelines range . . . ." <u>Cooper</u>, 437 F.3d at 331. The Court later noted: "The farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be." <u>United States v. King</u>, 454 F.3d 187, 195 (3d Cir. 2006), quoting <u>United States v. Jordan</u>, 435 F.3d 693, 696-97 (7th Cir. 2006).

The final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities. Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

      (1) The guidelines are much more comprehensive than any other factor set forth under 3553(a). Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing. "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under <u>Booker</u> and § 3553(a)." <u>United States v. Shelton</u>, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing

Commission, quoted in United States v. Peach, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005). In formulating the guidelines, the Commission was required to and has considered all of the Section 3553(a) factors. See 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1 Editorial Note.

(2) The guidelines are the product of years of nationwide experience and sustained study. In drafting the original guidelines (which became effective with respect to offenses committed on or after November 1, 1987), the Sentencing Commission canvassed prior sentencing practice, identifying aggravating and mitigating factors. 28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on the Initial Sentencing Guidelines and Policy Statements 16-17 (1987). Since then, the Commission has continued to study district court and appellate sentencing decisions, and has fine-tuned the guidelines to take them into account. U.S.S.G. App. C.[1] The Sentencing Commission's incomparable flow of nationwide information, and its years of concentrated study on this topic, merit strong consideration by judges who are assigned the task of determining appropriate sentences for criminal conduct. United States v. Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d 1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

(3) The correctly calculated guideline range is the only means to evaluate the statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid

---

[1] Indeed, the Booker Court specifically affirmed that the Commission will continue to study appellate and district court sentencing decisions, and "will continue to modify its Guidelines in light of what it learns, thereby encouraging what it finds to be better sentencing practices." Booker, 543 U.S. at 263 (Breyer, J.).

unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[2] Congress, the Court, and the guidelines all seek to minimize such disparity compared to "all other similar sentences imposed nationwide." United States v. White, 406 F.3d 827, 837 (7th Cir. 2005). The Sentencing Guidelines provide the comprehensive information and guidance about sentencing around the nation that is essential to accomplishing Congress' goal of uniform federal sentencing. "The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-district is for sentencing courts to apply some uniform measure in all cases. The only standard currently available is the Sentencing Guidelines." Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful substitute for the neutrality, coherence, and equality" that the guidelines provide). Measuring reasonableness in relation to the guideline range serves "to minimize the wide disparity in sentencing across the country for similarly situated defendants that led to the enactment of the Guidelines in the first place." United States v. Paulus, 331 F. Supp. 2d 727, 733 (E.D. Wis. 2005).

The Third Circuit in Cooper stated that "'[t]he Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country,' and provide a natural starting point for the determination of the appropriate level of punishment for criminal conduct."

---

[2] Every opinion in Booker acknowledged the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible. See, e.g., Booker, 543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 744 (same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its success upon judicial efforts to determine, and to base punishment upon, the real conduct that underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).[3]

Accordingly, while many appellate courts have reversed as unreasonable sentences imposed outside the applicable guideline ranges,[4] reversals of sentences imposed within the guideline range have been extraordinarily rare, and have occurred only where the appellate court found that the district court did not adequately explain the sentence. See, e.g., United States v. Carty, 453 F.3d 1214, 1220-21 (9th Cir. 2006). Moreover, the Courts of Appeals have emphasized that the further outside the range, either above or below, a sentence falls, the stronger must be the justification for such disparate sentencing.[5]

---

[3] In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses. Section 3553(a)(6) focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law." United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

[4] See, e..g, United States v. Zapete-Garcia, 447 F.3d 57 (1st Cir. 2006); United States v. Smith, 445 F.3d 1 (1st Cir. 2006); United States v. Davenport, 445 F.3d 366 (4th Cir. 2006); United States v. Hampton, 441 F.3d 284 (4th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434-37 (4th Cir. 2006); United States v. Duhon, 440 F.3d 711 (5th Cir. 2006); United States v. Goody, 442 F.3d 1132 (8th Cir. 2006); United States v. Lazenby, 439 F.3d 928, 933 (8th Cir. 2006); United States v. McVay, 447 F.3d 1348, 1357 (11th Cir. 2006).

[5] "[T]he farther the judge's sentence departs from the guidelines sentence . . . the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed." United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005). The Third Circuit cited this view with approval in King. Accord United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Gatewood, 438 F.3d 894, 896 (8th Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006).

The Supreme Court has granted certiorari to further clarify the significance of the Sentencing Guidelines. In United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), cert. granted, 2006 WL 2187967 (U.S. Nov. 3, 2006), the key issue presented is whether, as stated in these cases, a sentence which constitutes a substantial variance from the guidelines must be justified by extraordinary circumstances. The pendency of this case need not concern the Court here, however, as the government asserts that a sentence within the guideline range is most

7

**C. The § 3553(a) Factors**

Once the Court has properly calculated the guideline range, the Court must next consider all of the sentencing considerations set forth in Section 3553(a). Those factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

---

appropriate in this case, and there is no persuasive basis for any variance. In a second case pending before the Supreme Court, United States v. Rita, 177 Fed. Appx. 357 (4th Cir. May 1, 2006) (per curiam; not precedential), cert. granted, 2006 WL 2307774 (U.S. Nov. 3, 2006), the significant question presented is whether it is consistent with Booker to accord a presumption of reasonableness to within-guidelines sentences. The resolution of that case also is not significant here. The Third Circuit, as opposed to the Fourth Circuit and others, has already made clear that no presumption of reasonableness applies to a guideline range. Cooper, 437 F.3d at 331-32. Thus, the government here does not advocate a guideline sentence based on any presumption, but rather based on the persuasive force of the guidelines and the other considerations of sentencing, as set forth above.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A full review of all pertinent factors supports the conclusion that a within guideline sentence is appropriate in this case.

### D. Application of the § 3553(a) Factors

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Section 3553(a)(4) and (5) specifically direct the Court to consider the applicable guidelines, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing, which, is best accomplished through faithful application of the guidelines. The other 3553(a) factors also support this conclusion:

- Nature and Circumstances of the Crime

The possession of an unregistered machine gun is a serious crime that warrants a term of incarceration within the applicable guideline range. Here, Hojnowski, an avid gun collector, came into possession of an Uzi semi-automatic firearm. The original owner had purchased the Uzi as a semi-automatic weapon in or about 1983. The Uzi was stolen from the original owner shortly after purchase, and this theft was reported to the police. Although the defendant was not involved in the theft of the weapon, he was certainly involved in possessing the firearm, and converting the Uzi to a machine gun, a fully automatic weapon. The defendant made the actual arrangements for the Uzi to be modified to shoot automatically. It is capable of firing more than one shot without manual reloading by a single function of the trigger. This

9

firearm is an operable and dangerous weapon.

The Uzi machine gun was never registered to any individual, including the defendant, as mandated under the National Firearms Act of 1934. The registration requires every person possessing such a firearm, not acquired from a registered manufacturer or dealer, to identify the firearm, and provide his or her own identification. This enables law enforcement to track the weapon and its owner, thus reducing the incidence of the casual manufacture and transfer of this class of very lethal weapon[6] outside the regulatory mainstream.

By failing to register the Uzi machine gun, the defendant circumvented National Firearm Association (NFA) requirements. In doing so, he concealed not only his ownership of the machine gun, but his involvement in converting the Uzi to a fully automatic weapon. At the time the machine gun was seized by the Philadelphia Police, the Uzi was casually "stored" in a bag in a closet in the defendant's bedroom. If the weapon was stolen from the defendant, transferred by him, or used to perpetrate a crime, the ability of law enforcement to track the firearm and the owner would be significantly impaired. Accordingly, the defendant's criminal activity falls squarely within the class of cases to which the applicable guidelines are addressed.

- <u>The Need for the Sentence Imposed</u>

It is clear that the recommended term of imprisonment envisioned by the guidelines, is required to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. The applicable guideline sentence of incarceration affords adequate deterrence to the defendant and to others who would commit a similar offense.

---

[6] In fact, 18 U.S.C. § 922(o) prohibits possession of all machine guns made after 1986. See 18 U.S.C. § 922(o)(2)(B); Pub. L. No. 99-308 § 110(c), 100 Stat. 449, 461(1986).

§ 3553(a)(2).

Possession of an unregistered machine gun is a serious crime. The public policy considerations are significant if such a lethal firearm is trafficked, transferred or otherwise moved outside the regulatory mainstream, without proper identification of the firearm and the owner. This statutory regulation is clearly designed to protect public safety, as machine guns are highly dangerous offensive weapons. A sentence of incarceration sends an appropriate message that the transfer/possession of machine guns in violation of the NFA will not go lightly punished. Any sentence below the advisory guideline range would tend to depreciate the seriousness of this crime and the defendant's involvement in possessing and modifying the firearm.

- <u>Other Factors</u>

There are no factors set forth in the Pre Sentencing Report (PSR) that warrant departure from the advisory guideline range, or otherwise indicate that incarceration would be inappropriate for this defendant. Further, there is no need in this case to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or other additional treatment. (§ 3553(a)(2)(D). The defendant has fully accepted responsibility for his offense conduct, and appropriately this has been taken into consideration with a downward adjustment of three levels. The defendant has not otherwise advanced any persuasive argument for leniency.

Further, although the defendant has minimal assets, he is currently employed as a contractor, earning between $75 to $100 per day, 5 days a week. He is paid in cash. (PSR, paragraph #61). The defendant has no children to support and minimal expenses. It is clear that the defendant has the ability to pay a fine within the applicable guideline fine range of $5,000 to

$10,000.

IV.  CONCLUSION

In summary, all of the appropriate considerations of sentencing support the imposition in this case of a guideline sentence of incarceration.  The government respectfully recommends the Court sentence the defendant to a term of incarceration contemplated by the guidelines and impose a fine of $10,000 as a condition of supervised release.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
SUZANNE B. ERCOLE
Assistant United States Attorney

Date:

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been electronically filed with the Court and served upon defense counsel via facsimile.

        Jonathan Krinick, Esquire
        Penn Mutual Towers, 510
        Walnut Street, 16th Floor
        Philadelphia, PA 19106
        Fax (215) 922-3524


_____
SUZANNE B. ERCOLE
Assistant United States Attorney

Date: